IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-01772-PAB-KAS

GREAT BOWERY INC. d/b/a TRUNK ARCHIVE,

    Plaintiff,

v.

VIVID BEAUTY, and Does 1 through 10 inclusive, whose true names are unknown,

    Defendants.

## ORDER

This matter comes before the Court on the Motion for Default Judgment [Docket No. 12].

## I. BACKGROUND[1]

Plaintiff Great Bowery Inc. d/b/a Trunk Archive ("Trunk Archive") is a photography licensing agency. Docket No. 1 at 3, ¶ 9. Photographer Florian Sommet is a successful photographer who licenses some of his work to Trunk Archive. *Id.* at 3-4, ¶¶ 11-13. One of Mr. Sommet's photographs depicts a female model with skincare devices held up to her face (the "Work"). *Id.* at 4, ¶ 15; Docket No. 1-1 at 2. Mr. Sommet registered the Work with the United States Copyright Office under Registration Number VA 2-237-252 with an effective date of registration of January 19, 2021. Docket No. 1 at 4, ¶ 17;

---

[1] Because of the Clerk of Court's entry of default, *see* Docket No. 11, the factual allegations in plaintiff's complaint, Docket No. 1, are deemed admitted. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

Docket No. 1-1 at 5. Mr. Sommet granted Trunk Archive the exclusive right to license the Work. Docket No. 1 at 4, ¶ 19.

Defendant Vivid Beauty is an esthetics spa. *Id.* at 5, ¶ 20. Vivid Beauty manages, operates, and controls the Facebook account Vivid Beauty Clinic. *Id.*, ¶ 21. On or about August 12, 2024, Mr. Sommet discovered the Work being used as the cover image on Vivid Beauty's Facebook account. *Id.*, ¶ 23; Docket No. 1-1 at 7-8. Trunk Archive never granted Vivid Beauty a license to copy, display, distribute, or otherwise use the Work. Docket No. 1 at 5, ¶ 25. After discovering the unauthorized use, Trunk Archive, through counsel, contacted Vivid Beauty and asked it to remove the Work. *Id.* at 6, ¶ 27. Trunk Archive and Vivid Beauty were unable to come to an agreement about Vivid Beauty's use of the Work. *Id.*

On June 5, 2025, Trunk Archive filed this case, bringing a claim against Vivid Beauty under 17 U.S.C. § 101 *et seq* for copyright infringement. *Id.* at 7-8, ¶¶ 31-48. On June 24, 2025, Trunk Archive served Vivid Beauty. Docket No. 9. Vivid Beauty has not made an appearance in this action. On July 29, 2025, the Clerk of the Court entered default against Vivid Beauty. Docket No. 11. On August 6, 2025, Trunk Archive filed the motion for default judgment. Docket No. 12. In addition to obtaining default judgment, plaintiff seeks statutory damages in the amount of $13,200, attorney's fees and costs in the amount of $2,682.50, prejudgment interest, and a permanent injunction enjoining Vivid Beauty from infringing Trunk Archive's copyright. Docket No. 12 at 2, 9, 11.

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the

Clerk of the Court under Rule 55(a).  Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b).  *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion."  *Olcott*, 327 F.3d at 1124 (citation omitted).  In exercising that discretion, the court considers that "[s]trong policies favor resolution of disputes on their merits."  *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted).  "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party."  *Id.*  Default judgment serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights."  *Id.* at 733.  When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment."  *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence.  *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure.  We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.  The threat of judgment by default serves as an incentive to meet this standard.") (internal citation omitted).  One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted.  *See* 10A Charles

3

Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2022 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id*. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

To obtain a default judgment for a sum certain, the plaintiff must show the following by affidavit. First, that the party in default is (1) not a minor or an incompetent person, (2) is not in military service, and (3) has not made an appearance. D.C.COLO.LCivR 55.1(a)(1). Second, that the sum is certain or the sum can be made certain by computation. D.C.COLO.LCivR 55.1(a)(2). Additionally, the plaintiff must submit a proposed form of judgment that shows (1) the party in favor of whom judgment shall be entered, (2) the party against whom judgment shall be entered, (3) the sum certain amount consisting of the principal amount, prejudgment interest, and the rate of

post judgment interest, and (4) the sum certain of attorney fees.  D.C.COLO.LCivR 55.1(b).

## III.  ANALYSIS

### A.  Jurisdiction

Before entering default judgment, the court must determine whether it has subject matter jurisdiction over the case and personal jurisdiction over the defendant. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

#### 1.  *Subject Matter Jurisdiction*

Trunk Archive states that the Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).  Docket No. 1 at 1, ¶ 2.  Pursuant to 28 U.S.C. § 1331, the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Pursuant to 28 U.S.C. § 1338(a), the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights."  The Court therefore has subject matter jurisdiction over Trunk Archive's copyright claim pursuant to 28 U.S.C. § 1331 because the claim arises under federal law.  Furthermore, 28 U.S.C. § 1338(a) gives the Court original jurisdiction over any civil action relating to copyrights.

#### 2.  *Personal Jurisdiction*

Plaintiff bears the burden of establishing personal jurisdiction.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  Plaintiff can satisfy its burden by making a prima facie showing.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d

5

Case No. 1:25-cv-01772-PAB-KAS   Document 14   filed 01/12/26   USDC Colorado
pg 6 of 19

1063, 1070 (10th Cir. 2008). The Court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further. *Id.* The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.*

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021).

Furthermore, proper service is a jurisdictional prerequisite to litigation. *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit."). Without proper service, the court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

### a. Service of Process

Federal Rule of Civil Procedure 4(h) governs the service of corporations. Rule 4(h)(1)(B) provides that a plaintiff may serve process on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B); *see also Howarth*, 2021 WL 4775270, at *3. Courts have applied Rule 4(h) to limited liability companies. *See Warming Trends, LLC v. Flame DesignZ, LLC*, No. 22-cv-00252-PAB-STV, 2023 WL 196288, at *3 (D. Colo. Jan. 17, 2023). Vivid Beauty is a limited liability company. Docket No. 1 at 2, ¶ 6. On June 24, 2025, Maria Viguerias was served by Trunk Archive's process server. Docket No. 9. The Colorado Secretary of State's website lists Maria Viguerias as Vivid Beauty's registered agent. Summary, https://www.coloradosos.gov/biz/BusinessEntityDetail.do?quitButtonDestination=BusinessEntityResults&nameTyp=ENT&masterFileId=20171321946&entityId2=20171321946&fileId=20171321946&srchTyp=ENTITY (last visited Jan. 07, 2026). Therefore, the Court finds that Vivid Beauty was properly served.

### b. Due Process

General jurisdiction extends to "any and all claims" brought against a defendant, including claims that have no relation to the forum state. *Ford Motor Co. v. Montana*

7

*Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citation omitted).  A court may exercise general jurisdiction only when a defendant is "essentially at home" in the state.  *Id*.  For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (citation omitted); see also *Ford Motor Co.*, 592 U.S. at 359.  "Courts have held that *Daimler* applies with equal force to limited liability companies."  *Bliss v. Change Healthcare Operations LLC*, 2021 WL 706770, at *1 (W.D. Okla. Feb. 23, 2021) (collecting cases).  Here, Trunk Archive alleges that Vivid Beauty is a Colorado limited liability company with its principal place of business at 421 W 104th Ave., Ste L, Northglenn, Colorado 80234.  Docket No. 1 at 2, ¶ 6.  Therefore, the Court has general jurisdiction over this case and can exercise personal jurisdiction over Vivid Beauty.

### B. Merits

To enter default judgment against Vivid Beauty, the Court must find that Vivid Beauty, based on the material allegations in the complaint, is liable for copyright infringement.  The Copyright Act gives copyright owners the exclusive right to make copies and derivative works and gives copyright owners a cause of action against anyone who violates the rights of the owner.  17 U.S.C. §§ 106, 501.  To succeed on a copyright infringement action, two elements must be met: (1) the plaintiff has a valid copyright and (2) defendant copied the plaintiff's original work.  *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Trunk Archive sufficiently alleges that it has an exclusive license to the Work.  Trunk Archive states that Mr. Sommet was granted a registered copyright to the Work with an effective date of registration of January 19, 2021.  Docket No. 1 at 4, ¶ 17.

Trunk Archive further alleges that Mr. Sommet granted the exclusive rights to this copyright to Trunk Archive.  Docket No. 1 at 4-5, ¶ 19.  A copy of the registration on file with the Copyright Office is attached to the complaint as Exhibit B.  *See* Docket No. 1-1 at 5.  Exhibit B is the copyright registration for a group of published photographs.  *Id* at 4.  It identifies the photographs through their TIFF files.[2]  Trunk Archive does not specifically allege which TIFF file in Exhibit B corresponds to the Work.  However, Trunk Archive does generally allege, through its complaint and through a declaration, that the Work was part of the registration in Exhibit B.  Docket No. 1 at 4-5, ¶¶ 15-19; Docket No. 12-1 at 2, ¶¶ 4-8.  In the context of a default judgment, where the factual allegations in the complaint are deemed admitted, *see Olcott*, 327 F.3d at 1125, this is sufficient to establish that the Work is copyrighted.

       Trunk Archive sufficiently alleges that Vivid Beauty copied the Work.  Specifically, Trunk Archive alleges that Vivid Beauty "copied and published [the Work] on [Vivid Beauty's] Facebook Account as the cover image at the top of their profile."  Docket No. 1 at 5, ¶ 23.  Screenshots of the Work being used on the Facebook account are attached to the complaint as Exhibit C.  Docket No. 1-1 at 7-8.  These screenshots are time-stamped as being captured on August 16, 2024, after the copyright had been registered.  *Id.*  Trunk Archive alleges that it never gave Vivid Beauty a license or other permission to display, copy, distribute, or otherwise use the Work on Vivid Beauty's Facebook account or on any other platform.  Docket No. 1 at 6, ¶ 28.

---

[2] "TIFF is a file format for storing images, including photographs and fine arts." *Catch Curve, Inc. v. Venali, Inc.* 2008 WL 11335015, at *3 n.6 (C.D. Cal. Aug. 12, 2008).

9

Accordingly, the Court finds that Trunk Archive sufficiently states a claim for copyright infringement under 17 U.S.C. § 501.

### C. <u>Damages</u>

Default judgment requires the court to ascertain the amount of damages. *See Reg'l. Dist. Council v. Mile High Rodbusters, Inc.,* 82 F. Supp. 3d 1235, 1243 (D. Colo. 2015) (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984)). The court must hold a hearing on the damages claimed before entering default judgment unless "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985). "Actual proof must support any default judgment for money damages where there is an uncertainty as to the amount." *Mile High Rodbusters, Inc.,* 82 F. Supp. 3d at 1243 (citing *Klapprott v. United States*, 335 U.S. 601, 611–12 (1949)). "While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to the amount of damages are generally not accepted as true." *First Home Bank v. USA Pro Roofing & Constr., LLC*, No. 18-cv-00965-MSK-STV, 2018 WL 6990394, at *3 (D. Colo. Oct. 19, 2018); *see also United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished). "In making an independent determination of the amount of damages, the court may rely on detailed affidavits or documentary evidence." *BMO Harris Bank N.A. v. Marjanovic*, No. 19-cv-02945-CMA-KMT, 2021 WL 307501, at *4 (D. Colo. Jan. 29, 2021) (citations and quotation omitted).

The victim of copyright infringement is entitled to actual damages, including any profits of the infringer, or to statutory damages. 17 U.S.C. § 504(a). Section 504 states, in relevant part:

10

>(b) Actual Damages and Profits–The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.
>
>(c) Statutory Damages–
>
>>1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504. In its complaint, Trunk Archive asks for "an award of actual damages and disgorgement of all of [sic] profits attributable to the infringement as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant pursuant to 17 U.S.C. § 504(c), whichever is larger." Docket No. 1 at 8. In its motion for default judgment, Trunk Archive "requests statutory damages." Docket No. 12 at 8. Therefore, Trunk Archive has elected a statutory award.

Trunk Archive seeks statutory damages for willful infringement in the amount of $13,200. Docket No. 12 at 9. Trunk Archive bases its calculation on the licensing fee it charged for a comparable photograph taken by Mr. Sommet. *Id.*; Docket No 12-1 at 4, ¶¶ 20-23; Docket No. 12-2 at 7. That fee was €5,700, which Trunk Archive claims translates to $6,593.10 using current exchange rates. Docket No. 12-1 at 4, ¶ 21; Docket No. 12-2 at 7. Trunk Archives' request is roughly double that amount and,

11

according to Trunk Archive, "would fully compensate Plaintiff for the damages suffered, and deter future infringers from violating the law, without giving Plaintiff an undue windfall." Docket No. 12 at 10.

The Court has the discretion to award statutory damages ranging from $750 to $30,000, and up to $150,000 if the infringement was committed willfully, for "all infringements involved in the action, with respect to any one work." 17 U.S.C. § 504(c)(1)-(2). "An infringer is liable for the number of original works infringed, not for the number or type of copies made." *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361 (S.D.N.Y. 2003). Here, Trunk Archive alleges that one of its copyrighted works was infringed by Vivid Beauty. *See* Docket No. 1-1 at 2.

The Court finds that Trunk Archive sufficiently alleges that Vivid Beauty's infringement was willful. "A claim for willful copyright infringement requires a showing that the defendant knowingly or recklessly infringed on a plaintiff's copyright." *Tague v. Mind Rocket, LLC*, No. 20-cv-00230-REB-KLM, 2023 WL 11992382, at *1 (D. Colo. Mar. 1, 2023). Where a plaintiff has "numerous contacts" with a defendant "about the need for permission" to use a copyrighted work, and the defendant refuses to pay a license fee, a defendant's use was "knowing, deliberate, and willful." *Girlsongs v. 609 Indus., Inc.,* 625 F. Supp. 2d 1127, 1130 (D. Colo. 2008). Trunk Archive alleges that it contacted Vivid Beauty about removing the Work from its Facebook page shortly after discovering the infringing use. Docket No. 1 at 6, ¶ 27. Trunk Archive further alleges that it attempted to resolve this matter with Vivid Beauty without court intervention, but the parties were unable to come to an agreement. *Id.* However, Vivid Beauty ultimately did remove the Work from its Facebook page. Docket No. 12-1 at 2, ¶ 10. While Trunk

Archive does not provide any further details about its communication with Vivid Beauty, the Court nevertheless finds that Vivid Beauty's failure to resolve the matter with Trunk Archive coupled with its failure to appear in this action demonstrates that its infringement was willful.[3]

"An award of statutory damages is appropriate in the default judgment context because the information needed to prove actual damages is within the infringers' control." *Tague*, 2023 WL 11992382, at *2 (internal quotations and citation omitted). Because of the important deterrent purposes served by statutory damages, courts routinely award statutory damages that are between two and three times license fees. *See Girlsongs*, 625 F. Supp. 2d at 1131 (collecting cases). Trunk Archive has alleged that the license fee for a comparable work of Mr. Sommet was approximately $6,593.10 and requests $13,200—a statutory award that is roughly double the license fee. Docket No. 12 at 9; Docket No 12-1 at 4, ¶¶ 20-23; Docket No. 12-2 at 7. The Court finds that $13,200 in statutory damages is reasonable and appropriate under the circumstances.

### D. **Attorney's Fees**

The court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "[A]ttorney's fees are to be awarded to the prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). There is no "precise rule or formula" for determining whether fees should be awarded. *Id*. However, the Supreme Court has endorsed four non-exhaustive factors to consider: frivolousness, motivation, objective unreasonableness,

---

[3] Other courts have assumed that a defendant's default by itself is sufficient to establish that the defendant willfully infringed a plaintiff's copyright. *See Arista Recs., Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (collecting cases).

13

and the need to advance considerations of compensation and deterrence. *Id*. at 1033 n.19. The Court addresses each in turn.

First, Trunk Archive's claim is not frivolous. The Work has had a registered copyright since 2021, with Trunk Archive having the exclusive right to license the copyright. Docket No. 1 at 4-5, ¶ 17-19. Vivid Beauty does not have a license to use the Work. *Id.* at 5, ¶ 25. Trunk Archive learned in August 2024 that Vivid Beauty used the Work without authorization, as evidenced by Vivid Beauty's Facebook account featuring the Work. *Id.*, ¶¶ 23-24.

Second, there does not appear to be any improper motivation by Trunk Archive. Trunk Archive brings a suit to assert its right to the copyright which it has the exclusive right to license. Docket No. 1 at 4-5, 7, ¶¶ 19, 33. Upon discovering that Vivid Beauty was using the Work without authorization, Trunk Archive notified Vivid Beauty of the infringement. *Id.* at 6, ¶ 27. The parties were unable to resolve the matter. *Id.* Only after negotiations were unsuccessful did Trunk Archive file suit. The Court has no reason to doubt Trunk Archive's motivation, especially given the valid grounds for the suit. Third, Trunk Archive's suit is objectively reasonable. As discussed in regard to frivolousness, Trunk Archive had valid reason to believe that Vivid Beauty used the Work without authorization.

Fourth, considerations of compensation and deterrence lean in favor of attorney's fees. To ensure that Trunk Archive is compensated for pursuing this action against a dilatory defendant, attorney's fees are appropriate. *See Tague*, No. 2023 WL 11992382, at *3 ("Courts in this district have routinely awarded costs and fees under

14

§ 505 as part of a default judgment"). A fee award would also serve to deter Vivid Beauty from continued infringement.

Trunk Archive, however, has not properly supported its request for attorney's fees. Under the Local Rules of the District of Colorado, a motion for attorney's fees must include "a summary of relevant qualifications and experience" for each person for whom fees are claimed. D.C.COLO.L.CivR 54.3(b)(1). Trunk Archive submitted a declaration from its counsel, Theodore Sell, in support of its request for attorney's fees. Docket No. 12-1 at 4-5. Trunk Archive does not summarize Mr. Sell's qualifications either in its motion or the declaration. Accordingly, Trunk Archive has not complied with the Local Rules and is not entitled to attorney's fees at this time.

### E. Injunctive Relief

Trunk Archive requests that the Court issue a permanent injunction "preventing Defendant from further infringement of all copyrighted works of the Plaintiff pursuant to 17 U.S.C. § 502. Docket No. 1 at 8-9. The Court has authority to issue such an injunction. *See* 17 U.S.C. § 502.

The Supreme Court in *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006), established a four-factor test for determining whether permanent injunctive relief is appropriate in the case of patent infringement. Its holding extends to other types of intellectual property cases. *See Underwood v. Bank of Am. Corp.*, No 18-cv-02329-PAB-MEH, 2018 WL 6655913, at *5 (D. Colo. Dec. 19, 2018). In *Underwood,* the Court cited cases from the Third and Ninth Circuits holding that the *eBay* principles apply to trademark infringement cases. *See Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205 (3d Cir. 2014); *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013). In *Herb Reed*, the Ninth Circuit held that a "plaintiff must establish

15

irreparable harm" to "obtain a permanent injunction in a trademark infringement action." 736 F.3d at 1249. The Third Circuit held the same, reasoning that "[t]he rationale of the *eBay* decision was not that patent cases are somehow unique, but rather . . . that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity." *Ferring*, 765 F.3d at 215 (internal quotations and citation omitted).

*Underwood* agreed with these cases, finding that district courts could not depart from the "long tradition of equity practice absent a clear congressional mandate to do so." *Underwood*, 2018 WL 6655913, at *5 (internal quotation and citation omitted). Similarly, the Tenth Circuit has held that "[c]ourts may presume irreparable harm only when a party is seeking an injunction under a statute that *mandates* injunctive relief as a remedy for a violation of the statute." *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1140 (10th Cir. 2017). Other courts in this district have applied the *eBay* principles to copyright infringement cases. *See, e.g.*, *Your True Nature, Inc. v. JF Show Store*, No. 23-cv-00107-GPG-NRN, 2024 WL 3340974, at *5 (D. Colo. June 21, 2024); *Tague*, 2023 WL 11992382, at *2.

For the reasons articulated in *Underwood*, the Court finds that the principles set out in *eBay* apply to Trunk Archive's copyright infringement claim. The Court must therefore evaluate Trunk Archive's request for injunctive relief under the well-established equitable principles used in granting injunctive relief. *See, e.g., Salinger v. Colting*, 607 F.3d 68, 78–80 (2d Cir. 2010) (applying *eBay* to copyright infringement actions).

*eBay* requires Trunk Archive to "demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." 547 U.S. at 391 (citations omitted).

The Court finds that Trunk Archive is not entitled to injunctive relief.  First, Trunk Archive has not demonstrated irreparable harm.  While Vivid Beauty used the Work without authorization and featured it on its Facebook account, it has since removed the Work from its Facebook account.  Docket No. 1 at 5, ¶¶ 23–25; Docket No. 12-1 at 2, ¶ 10.  Moreover, with the Court's grant of statutory damages, Trunk Archive has been fairly compensated for Vivid Beauty's use of the Work, being paid approximately double the six-month licensing fee of a comparable photograph.

Second, monetary damages are sufficient to compensate Trunk Archive.  Trunk Archive has not alleged that Vivid Beauty is continuing to infringe its work; in fact, Trunk Archive admits that Vivid Beauty stopped using the Work.  Docket No. 12-1 at 2, ¶ 10.  Furthermore, considering there is only one known instance of Vivid Beauty infringing Trunk Archive's work, any conjecture that there might be further infringing activity is speculative.  Thus, the first two elements are not met, and Trunk Archive is not entitled to injunctive relief.

### F. Prejudgment Interest

The Court has discretion regarding whether to award prejudgment interest. *Keybank Nat'l Ass'n v. Nw. Pro. Color, Inc.*, No. 15-cv-2180-WJM-CBS, 2016 WL 1446134, at *3 (D. Colo. Apr. 13, 2016) (citing *Caldwell v. Life Ins. Co. of N. Am.*, 1276,

1287 (10th Cir. 2002). Trunk Archive requested prejudgment interest in both its complaint and its motion for default judgment. Docket No. 1 at 9; Docket No. 12 at 2. However, the proposed form of judgment submitted as an attachment to the motion for default judgment does not include an award of prejudgment interest. *See* Docket No. 12-3 at 1-3. Moreover, Trunk Archive does not propose at what rate prejudgment interest would accrue or argue why it should be entitled to such interest. Other courts in this district have declined to award prejudgment interest when the plaintiff failed to specify how such interest would be calculated. *See Baxter Constr. Co., LLC v. SF Constr., Inc.*, No. 22-cv-01117-NYW, 2024 WL 1537998, at *3 (D. Colo. Apr. 9, 2024); *Japan Bio Sci. Lab'y Co., Ltd. v. N-ZymeCeuticals, Inc.*, No. 07-cv-02635-DME-MJW, 2009 WL 1117437, at *2 (D. Colo. Apr. 23, 2009).

Even if Trunk Archive specified the rate at which prejudgment interest would accrue, the Court would still not award prejudgment interest. The Court finds that a statutory award of $13,200, plus any amount of attorney's fees that the Court may award based on further briefing from Trunk Archive, "sufficiently meet the need for deterrence and to make [plaintiff] whole." *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 247 (S.D.N.Y. 2023) (declining to award prejudgment interest because the court already awarded damages in the amount of $30,000 and attorney's fees). Plaintiff is, however, entitled to postjudgment interest pursuant to 28 U.S.C. § 1961. *See N. Star Sci. Sols., LLC v. Michigan Health Clinics*, No. 24-cv-00541-GPG-STV, 2025 WL 902427, at *6 (D. Colo. Feb. 25, 2025), *report and recommendation adopted*, 2025 WL 1251222 (D. Colo. Mar. 27, 2025) ("[p]ost-judgment interest . . . is mandatory under 28 U.S.C. § 1961").

IV. **CONCLUSION**

Therefore, it is

**ORDERED** that the Motion for Default Judgment [Docket No. 12] is **GRANTED in part**. It is further

**ORDERED** that judgment shall enter in favor of plaintiff Great Bowery Inc. d/b/a Trunk Archive and against defendant Vivid Beauty for statutory damages of $13,200. It is further

**ORDERED** that plaintiff Great Bowery Inc. d/b/a Trunk Archive may file a motion for attorney's fees that complies with D.C.COLO.LCivR 54.3 on or before **February 9, 2026**.

DATED January 12, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge